Mr. Bott, nice to see you. You may begin. Good morning, Your Honors, and may it please the Court. Kieran Bott for Petitioner's Appellants. This Court should reverse the District Court based on straightforward application of contract law principles, which are consistent with this Court's decision in Walrich v. Samsung. Because the District Court relied on Walrich to deny the motion to compel, I think it's a fair place to start. In Walrich, my friend Mr. Dvoretsky, on behalf of Samsung, made the winning argument that whether a defendant refused to arbitrate turned on whether the forum, there like here AAA, determined that some action from the defendant was necessary in order for the arbitrations to proceed. In that case, the AAA determined that Samsung was not required to pay fees for the arbitrations to proceed, and courts must defer to that determination. As Mr. Dvoretsky said during oral argument in Walrich, the parties there, quote, agreed to commit fee questions to the AAA under the AAA's rules. The dispute there thus came down to, quote, whether the AAA applied its rules and determined that Samsung violated the rules by declining to pay fees, and that its decision not to pay fees was a refusal to arbitrate. And according to Mr. Dvoretsky, Samsung prevailed there because the simple answer to that question was no. In other words, in Walrich, Samsung's refusal to pay fees was not a breach of the contract because that's what the contract said. The parties delegated fee disputes to the AAA. The AAA's rules said the arbitrations could proceed if the consumers advanced the fees. The AAA applied those rules, and the court had no authority to circumvent that conclusion. Here, the facts are the opposite and require reversal under that very same logic. The parties agreed to resolve disputes only by final and binding bilateral arbitration. That's at S.A. 79. The AAA's rules, Rule 12 in particular, expressly defines the business's registration of its arbitration clause as a condition precedent to arbitration. That's at S.A. 202. This dispute thus comes down to whether the AAA applied its rules and determined that Kohl's violated the rules by declining to register its agreement, and that its decision not to register the agreement was a refusal to arbitrate. The simple answer to those questions here is yes, and that follows from the AAA's communications to the parties in this case. On June 7th of 2023, the AAA advised that Kohl's, quote, failed to comply with the AAA's consumer arbitration rules. That, quote, in order for the AAA to consider accepting these disputes as well as disputes going forward, Kohl's must advise the AAA of its intention to comply, and, quote, at minimum must register its arbitration clause. I mean, doesn't Article 12 or not Article 12, Rule 12 by its terms contemplate this scenario? It does, Your Honor, and it doesn't give the AAA any discretion to do other than what it did in this case, which is to find first that Kohl's had violated its rules by not submitting its arbitration agreement for registration, and that if Kohl's does not comply, and this is at S.A. 181. Right. Absent a court order, absent a court order, the AAA will be unable to provide arbitration administration. The parties all agree here that Kohl's then refused to comply with Rule 12, refused to register its agreement, and the AAA confirmed weeks later that that was the reason it was declining arbitration administration. And appellants submit here that the court must defer to those conclusions as well, unlike in Walridge. But did the American Arbitration Association have the discretion to apply the consumer arbitration rules? Your Honor, I think there's a disagreement between the parties on this. I do agree that the AAA had discretion about whether to apply the consumer arbitration rules as a set of rules, and we cite in our papers the Jacobs case in which the Second Circuit made a determination about which set of rules applies, the consumer arbitration rules or the commercial arbitration rules, based on the dispute between the parties in that case over which set applied. And if you look at Rule 1E of the AAA consumer arbitration rules, and you look at the preamble to the AAA consumer arbitration rules, it's very clear that the discretion AAA has to apply or not apply the consumer arbitration rules is the discretion to apply or not apply that set of rules. And I think we gave the hypothetical in our papers that certainly the AAA couldn't order the parties to resolve their disputes by trial by combat in lieu of a Rule 32 hearing. It does not mean that AAA has a discretion to pick and choose which rules, which the parties agreed to, which specific individual rules would apply, and I think there's a disagreement between the parties on that. So if they decided to apply the consumer arbitration rules, and you asked us to look at the Supplemental Appendix 195. You directed us to 202, but I wanted to back up for a minute to 196 of the arbitration rules when the parties agree to arbitrate and where the consumer arbitration rules kind of walk through what initiates an arbitration. So is it the contention that the arbitration, looking at the consumer arbitration rules that AAA has decided to apply was never started? Yes. In a sense, the initiation of the demands, so the filing of the demands, initiates the process of arbitration. Is that in line with the consumer arbitration rules? I believe it is, yes, Your Honor. Okay. But here, I think the distinction between this case and Rawley's... I'm not asking that. I'm asking whether or not in this case was the arbitration initiated. Well, in the sense that the petitioners filed demands, they sought to initiate the arbitrations. I don't think that AAA ever actually exercised its authority to then go through the Rule 4 requirements in order to determine whether those demands were sufficient because Kohl's refused to register its arbitration agreement. So to the extent that one could say that the arbitrations had been initiated, it's solely by the submission of the demand itself and not by the AAA's subsequent administrative actions because Kohl's refusal to register its agreement barred AAA from taking that action as it set forth in the communications to the parties. Where are you getting in the rules that AAA would have been barred from exercising its discretion not to enforce Rule 12 and to go forward with the arbitration since the agreement was provided by clients? The Rule 12 itself, I believe it's S.A. 202, Judge Kohler, says that the American Arbitration Administration will decline administration if the business does not register its arbitration agreement. And I can find the specific language when I return to the podium for rebuttal, but I think it's important to note that any arbitral forum, its authority derives from the consent of the parties. And the parties in this case agreed to a set of rules in which a condition precedent to arbitration was the business's registration. Unlike in Walrich, we don't have a situation where the consumers could have done something. In fact, the consumers did attach their arbitration agreement to their demands, but the AAA said that wasn't enough. What needs to happen for this arbitration to proceed is that Kohl's needs to register its arbitration agreement. Kohl's needs to pay the associated expedited review fees and the original review fees for that registration. And so it would have been anathema for the AAA to just decide, well, we're going to ignore Rule 12 and just proceed with this anyways. That is, in fact, why, in my estimation, they advised the parties that in order for arbitrations to proceed, there needed to be some action from Kohl's. And that's what distinguishes this case from Walrich. It's a very different circumstance. And you can imagine very easily a hypothetical where the shoe is on the other foot. So say a claimant wanted to avoid arbitration. They then submit in lieu of the Rule 2 demand with the facts and the contact information, scrawl on a piece of yellow legal paper that says, I'd rather be in court. AAA comes back and says, well, hold on a second. We can't administer this arbitration unless you file a demand in compliance with Rule 2. Kohl's might even offer, we'll file the demand in light of the party's communications with one another. AAA says no. The consumer or the claimant says, I'm not going to submit a new demand. And the AAA closes the administration, declines administration. In that instance, it cannot possibly be that if the consumer then runs to court and tries to assert their claim in court that Kohl's loses the Section 4 right to compel arbitration. And I would submit to your honors that that's essentially what happened here. In this case, we've got a situation where Kohl's deliberately refused to register its agreement after being told that it was a violation of AAA's rules, did so in order to facilitate what we've described in our papers as a bad faith change in the terms in the middle of a dispute. The cases that Kohl cites on this front are simply not distinguishable from Pruitt, from Peleg, and the cases that we've relied on on the implied covenant. What happened is essentially there was notices of dispute filed in December 2022, five months of good faith negotiation. Kohl's decided to implement a strategy to change the procedures that apply to this dispute and then use that as cover in order to refuse to arbitrate at the AAA. Has any circuit court, to your knowledge, in a published opinion, so I'm not talking about state courts. I'm not talking about lower. Has any circuit court in a published precedential opinion taken a position contrary to the one this court adopted in Walrich? I don't think so, your honor. I don't think there are published opinions on that front, but again, I'd submit that. So then a lot of it comes down to the point you started with. This is not Walrich. That's right, and I think that that's dispositive in this case. I reserve four minutes for rebuttal. If the court has any additional questions, I'm happy to answer them. Otherwise, I'll reserve my time. Yeah, you're welcome to. Thank you. Very well. Mr. Dabrowski, nice to see you. Good morning, your honors. May it please the court. Shai Dvoretsky for Respondents, Employees, Kohls Corporation, and Kohls, Inc. This case is on all four. All four is with Walrich at the district court held below. As in Walrich, four things are true here. First, the arbitration agreement here incorporates the AAA rules. Second, as in Walrich, those rules give the AAA the discretion to apply or not apply any of its rules. And as this court described that proposition in Walrich, that's not about applying the rules as a whole. That is about applying or not applying any of the individual rules. Third, as in Walrich, those rules contemplate the scenario where one party refuses to satisfy a condition precedent for arbitration. In Walrich, that was paying fees. Here, it's registering the agreement. Fourth, as in Walrich, the AAA exercised its delegated authority to interpret and apply its rules when it closed the arbitration proceedings. Therefore, as in Walrich, arbitration was complete and the court doesn't have the authority to disturb the AAA's judgment. Counsel. Judge. So there are four things that might be similar to Walrich, but there are some differences here. In Walrich, the consumers had a way to make the arbitration proceed, namely advance the fees. Are you speaking? That's not present here. There's nothing the consumers could have done to have the arbitration proceed. And how is that not different than Walrich? Two points in response to that, Judge Kohler. One, the situation that you've just described was the same in Hogue where the AAA didn't give the consumers the opportunity to advance the fees. This court nevertheless applied Walrich and held that it was controlling to summarily reverse the district court there. Second, the key point is not whether the consumers had that option or not. Walrich simply didn't turn on that. The key point is that the parties here bargained for the AAA's application or discretion not to apply its own rules. And here, in both situations, the AAA had a rule that spelled out the consequences if a party didn't satisfy a condition precedent. And again, the AAA exercises discretion to apply that. The Second Circuit's recent decision in Frazier to get to Judge Scudder's question about other circuits' authority also confirms all of this. What the Second Circuit explained there was that a party's decision not to abide by the procedural determinations of an arbitrator is ordinarily not a refusal to arbitrate under Section 4. What that is, in the Second Circuit's words, is an intra-arbitration delinquency that arbitral bodies, like JAMS there and the AAA here, are empowered to manage. And so what the Second Circuit correctly said there was that the arbitrator has tools. It has discretion under the AAA rules that the parties bargained for. The arbitrator has tools available to it to resolve the issues as it sees fit, even if that ultimately means terminating the arbitrations. Now this might kind of dovetail, and you're probably going to rely on Frazier for this, but why wouldn't this just be somewhat of an, I don't want to call it an in-run-around Section 4, by Kohl's failure to file the registration agreement so that when Kohl's wants to go to arbitration, they file the registration versus litigate, and withholding it is just kind of a way to get around Section 4. So two points, Judge Pryor. First, again, I come back to AAA's discretion. The AAA has discretion to apply or not apply its own rules. It could waive the registration requirement if it wanted to. That's not what it did here. Instead, it applied the rules and terminated the arbitrations. So tell me the same question Judge Cutter asked. What rule would have permitted, I'm sorry, that was Judge Kollar, that would have permitted the arbitrators not to apply the requirement of the registration? So it's the general grant of discretion to the AAA. The AAA has the discretion to apply or not apply its rules, and it could choose not to apply the registration requirement and to proceed to the merits of the arbitration in that situation. Go ahead, finish your thought. No, go ahead. I'll follow you. Just to complete my answer to Judge Pryor on Section 4, Section 4 is about making sure that the parties go to the arbitration. If a party brings a claim in court that belongs in arbitration, Section 4 empowers the court to direct the parties, go to the arbitration and follow the arbitral rules. And then this brings us back to Frazier. Once the parties are before the arbitration, then we have an intra-arbitration issue, and that is what the AAA is empowered to adjudicate. If a court were to get involved in that, there would be no difference between interpreting and applying the AAA's rules here, which a court can't do on the one hand, and on the other hand, resolving a discovery dispute that comes up in arbitration. Again, Frazier gives this example. What if a party refuses to comply with the discovery order of an arbitrator? And then that party runs to court and says, my counterparty is refusing to arbitrate. They are not following the arbitrator's instructions. A court couldn't do that, not as a matter of Section 4 and not as a matter of sound judicial administration, and there's no sensible dividing line between that situation and this one. I think what your argument comes down to, and don't let me put words in your mouth, is what you're saying is, look, it's all the fruit of contract. It's all the product of a contract and agreement. And the parties could negotiate their primary contract different. They could negotiate terms and conditions that sit on top of the AAA rules that would delineate what are allowable reasons for not registering an agreement, et cetera. It just didn't happen here, and therefore you apply it as written. But Mr. Bott, how do you respond to their point that, geez, this sure looks mechanical. The obligation to register an agreement just looks like the notice of intent to arbitrate is lodged, there's a mechanical registration process that happens to kind of get the wheels of the process turning, and for Coles to have just refused to submit the agreement, it just makes all this look like a phantom. It makes it all look illusory. What's your response to that? So a couple of points on that, one on the illusory point, but I also think it's important to understand the context of how all of this came up. The reason that Coles didn't register the agreement here, didn't register the AAA agreement, is that it was no longer the operative arbitration agreement. Coles has registered its arbitration agreement with NAM, which is the currently operative agreement, but no, it did not register the agreement with the AAA because registering an agreement is holding out to the public in a public-facing website that this is the arbitration agreement that a company will arbitrate under. So you guys said the other one was withdrawn or superseded or displaced, we have a new one? Right, so that's the context. As far as the legal argument that the other side makes that this is an illusory contract, first, it's not an illusory contract because, again, as a matter of contractual terms, this is not an unfettered promise to arbitrate. It's a promise to arbitrate under the AAA rules, including the consequences for noncompliance. You can look at any particular incident of noncompliance and say, you can think that's either mechanical or insignificant or significant, but again, it's not the business of courts to make that determination. If a party doesn't comply with a condition precedent for arbitration, the rules set out the consequences for that. And given the AAA's discretion, it's not like there's no risk to the party in noncompliance. You don't know how the arbitrator or the arbitral body is going to respond to that. It might exercise its discretion not to apply the rules or to apply some different consequence than what's in the rules. So it's not an illusory promise because there is real risk and it's in the hands of a third party, the arbitral body, as to what's going to happen in that situation. Can you... I'm going to ask you the same question I asked Mr. Bott about the state of case law around the country. What's your understanding? No circuit court has disagreed with Walrich. In fact, as the Second Circuit recently explained, the circuit consensus on these issues is unanimous and the Second Circuit expounded upon Walrich with some very helpful language. That's the Judge Lynch opinion and Frazier? That's right, Judge Lynch. And counsel, the Frazier opinion, that was about fees as well, correct? It was about fees, but again, the key language there is really about conditions precedent to arbitration. There is no principled basis or reasoned basis to distinguish between the payment of fees on the one hand and any other condition precedent arbitration. Isn't one principled basis that the payment of fees doesn't bar the initiation of the arbitration and that the failure to register means that you never proceeded through arbitration in the first place? I don't think that's correct. The failure to register doesn't bar the initiation of arbitration either because the AAA can, again, waive that requirement. And my understanding in practice is that they sometimes do. So the AAA could have chosen to proceed to the merits. It didn't choose to. The payment of fees, if anything, I would think is more of a practical bar to proceeding with the arbitration because the AAA isn't going to work for free. And so either way, you have a condition precedent and you have a consequence under the rules that the AAA has discretion to apply. So is that effectively saying that they'd say, look, as a factual matter, you didn't register, but we're going to deem that acting in bad faith or we're going to, maybe not in bad faith, but we're going to just waive that requirement and we're going to go forward anyway on the demand to arbitrate? I don't think there was anything in the rules that would constrain the AAA's delegated discretion to do that if it wanted to do that. The key point here is that that's not what it chose to do. It sent a letter to the parties saying we are closing our files on these matters. And as far as the arbitration having been initiated, the AAA did assign case numbers to these files. It did start to process them in that way, and then it terminated them. As in Walrich, where the fees weren't paid, that means that the arbitration pursuant to the parties' agreement was complete. Is it your position that AAA have the discretion to apply or not apply Rule 12? Yes. And my friend on the other side argues that the discretion has to be understood as applying the AAA consumer rules as a whole or to apply different rules. Two points on that. One, that's not what Walrich said. Walrich said that under the AAA rules, the AAA has the discretion to apply or not to apply any of its rules, including rules that cover administrative fees. That's 106F4 at 613. That's not how Walrich described the rules. It's also not how the AAA itself describes its discretion to apply its rules. This is at 2SA192. It says the AAA has the discretion to apply... 192. Hold on, say that again. 2SA192. I can't flip that fast. It says the AAA has the discretion to apply or not to apply the consumer arbitration rules, and the parties are to bring any disputes concerning the application or non-application of the rules to the attention of the arbitrator. So the rules there are saying that the parties can bring any disputes concerning the application or non-application of particular rules. You wouldn't go to the arbitrator and have your dispute be... Arbitrator, the entire set of rules that you are applying, that you are operating under, is the wrong set of rules. This is talking about particular rules. Is there a limiting principle, if any? I'm sorry? Is there a limiting principle, if any, that we can glean from Walrich? I think the limiting principle really comes down to whether the... You could imagine a different set of rules that perhaps constrained what the arbitrator could or couldn't do. But on this set of rules, I think if you have a failure to comply with a conditioned precedent, and if the arbitral body has addressed that consistent with its authority under the rules, then I think the principle is that the arbitration has been had, and there isn't a role for the court to intervene in that situation. I think if you deviated from that principle, then you would have a problem with not being able to find a limiting principle, because how could you decide when a court is or is not allowed to start reading and interpreting arbitral rules, which, again, would both interfere with sound judicial administration by creating this sort of ping-pong between courts and arbitrators in a series of interlocutory arbitral appeals, and it would really defeat the purpose of arbitration, which is to have resolution pursuant to agreed-upon contractual terms and not to involve the judicial process in the way that you do if you resolve your disputes in court. But, counsel, those contractual terms, and Judge Scudder brought up illusory in his question, and is your argument that it's not illusory hinged essentially on the AAA not following its rules or exercising the discretion to ignore Rule 12? Because otherwise, you have an on-and-off switch for arbitration that claimants don't have. So two points. First, I wouldn't say that it's not following the rules when what they are following is the rule that lets them exercise discretion. There are all sorts of reasons why they might possibly exercise discretion. Excuse noncompliance, right? Right. Second, though, even if you think that Coles has this unilateral on-and-off switch, I disagree with that characterization, but even if you think that, this is still not an illusory promise because at that point, it's an option contract. Either Coles can choose to arbitrate, that's a real promise supported by consideration, or there's a forum selection clause in this situation, in this contract. If the parties don't arbitrate, then they agree to resolve their disputes in Wisconsin courts. That's also supported by consideration, and in all events, Coles agrees to let customers shop in his stores and on its websites. So no matter how you look at it, this isn't an illusory promise. There's consideration. Either way, this goes.  Any final thought you want to leave us with? We ask that you affirm the district court under Walrich. Okay.  Very well. You're welcome. Your Honors, if I may start with just the contractual text here to respond to the final point that Mr. Tvoretsky made, and I think it's important that the Court ground itself in the text of the actual contract. I'm looking at 1 SA 79. In capital and bolded letters, you and Coles agree that any dispute, and then it goes down a little bit, shall be resolved only by final and binding bilateral arbitration. That means arbitration, not arbitration or court. And I think it's confirmed on the following page, SA 80 Section F, the section titled Waiver of Jury Trial. You and Coles waive any right to go to court and have a trial in front of a judge or jury. You and Coles are instead choosing to have all disputes resolved by arbitration. So I think it's just a farcical premise that Coles, by incorporating the AAA rules and then itself refusing to register its agreement, had the option, contrary to the plain text of the actual contract itself. I also want to focus on Hogue, because I think it's illustrative of the limiting principle that Judge Pryor was asking about. So the Court in Hogue actually recognized that there's a distinction between a situation where the AAA simply allows the consumers to advance the fees and to proceed with arbitration and then terminates the files at the end, and a situation where the parties came together to the AAA and asked for a suspension in the arbitration. The AAA declined to do that but said, you can refile if you want to refile later on. I think the fact that the Court noticed that difference is really important here, because essentially, even sort of stipulating to Mr. Dvoretsky's premise about Frazier that intra-arbitration disputes are just unreviewable by the federal courts, you have the AAA's exercise of discretion here. You have the June 7, 2023 letter. It's at 2 SA 181, in which the AAA exercises its discretion to say, Kohl's, you have violated the consumer rules by not registering your agreement. If you do not comply, absent court order, we AAA cannot do anything to move forward. Didn't Sampson do that, though, as well, with its decision not to pay fees in Hogue? I mean, isn't it... It seems substantively awfully similar. Well, in Hogue, the parties went to AAA together and asked for a suspension of the arbitration so that the parties could resolve their dispute in court. And what the court said was... there's this... there's a situation in which the fact that the AAA left open the possibility of additional administration is relevant. It just doesn't apply in this Hogue case because the claimants brought their petition before they refiled their demands. So I think... I think here you have the AAA saying on June 7, 2023, that absent a court order, AAA would be unable to administer these disputes. And that's important. But in Hogue, there was still... I think where Judge Greta was going, there was still a conditioned precedent, and that was paying of the fees. I don't think it was a conditioned precedent, Your Honor. I don't think it was, because the AAA's rules in Hogue, in this case, in all three cases, in Walrich as well, make clear that the consumers can advance the fees. That was the supplementary rules that were described in the Walrich decision towards the end of the decision. It's very clear that the AAA had the discretion in that circumstance to allow the consumers to advance the fees. They did. And then subsequently, the AAA had another inflection point of discretion in which it could either decide to suspend or terminate the arbitration. So the termination in that case had independent significance because the consumers asked, can you please suspend this so that we can go to court and resolve this fee issue? And in response, AAA closed the files. Here, AAA told the parties, COLA's violating the rules. Absent a court order, we can't do anything. And after that, closed the files. And I think that makes all the difference. The fact that the AAA exercised its discretion to find that COLA's had violated the rules is what's dispositive in this case. So in Walrich, in Frazier, no breach. In this case, breach. And with that, I'd ask that you please reverse the district court's order. Thank you. Okay. Mr. Bott, thanks to you. Mr. Dabrowski, thanks to you and to all of your colleagues. We'll take the appeal under advisement.